

**Jason H. Ehrenberg**
Limited Partner

April 24, 2026

**VIA ECF**

Hon. Nina R. Morrison
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: **Fermin v. K2 Solutions, Inc., et al., No. 1:24-cv-05675 (NRM) (JRC) — Defendant K2 Solutions, Inc.'s Letter Request for Summary Judgment on All Claims and Request for Hearing and/or Briefing Schedule**

Dear Judge Morrison:

Defendant K2 Solutions, Inc. ("K2") respectfully submits this letter to outline why summary judgment should be granted in K2's favor on all claims and counts asserted against it, including Plaintiff's Title VII and NYSHRL sex discrimination/harassment and retaliation claims, ADA and state/city disability claims (discrimination, failure to accommodate, and retaliation), and the New York common-law false imprisonment claim. The undisputed record, as will be distilled in K2's forthcoming memorandum of law and Rule 56.1 statement, admits no triable issue on essential elements of each claim, and K2 has proffered legitimate, non-discriminatory, non-retaliatory and non-pretextual reasons for its actions. K2 respectfully requests a conference/hearing to address the issues outlined in this letter and/or to set a briefing schedule for summary judgment motion practice.

I.      **Factual Summary**

Plaintiff was terminated for ongoing and repeated performance issues. Plaintiff was warned and counseled about her work performance and behavior numerous times in the months leading up to her termination. The lack of any different or discriminatory treatment on the part of K2 is evidenced by the fact that (1) K2 granted Plaintiff's request to transfer from Florida to New York to be near her mother during her employment, and (2) K2 subsequently promoted Plaintiff into a supervisory position. And, while Plaintiff did complain to K2's human resources department about Defendant Superville's leadership and general poor treatment of her, her complaints did not start until after she had been counseled and warned about her job performance and negative impact on her coworkers' morale.

Plaintiff was hired by K2 on August 6, 2022 in Orlando, Florida. Plaintiff was transferred to New York at her request on February 23, 2023. On September 1, 2023, Plaintiff was selected for and promoted to Team Lead for K2's New York team. Justin Falconer was Cargo Program Manager and Defendant Superville's immediate supervisor during the relevant period. Falconer

---

Hon. Nina R. Morrison
April 24, 2026

and Superville served as Plaintiff's direct supervisory chain-of-command. As Team Lead, Plaintiff's schedule was managed by Plaintiff and Superville, with oversight from Falconer.

Although Plaintiff performed well in her role as a dog handler with K2, Plaintiff did not perform well in her position as Team Lead. Plaintiff's performance and behavior as Team Lead were unsatisfactory. Plaintiff received significant, timely, contemporaneous feedback about her work performance and Plaintiff was warned several times that continued performance and behavior could subject her to discipline, including termination. Plaintiff's first warning was issued on November 13, 2023. Plaintiff was informed at this time that she was receiving a warning for her behavior at work on and leading up to November 2, 2023. Plaintiff had been ordered to contact her supervisor concerning scheduling/availability. She failed to do so. Plaintiff was directed to contact her supervisor on November 13th, 2023, and she again failed to do so. Plaintiff's supervisors asked Plaintiff on numerous occasions prior to and after the above dates to contact them for help with scheduling handlers to assist with events throughout the Northeast region. Plaintiff responded on each such occasion that she was unavailable. Plaintiff was reminded at this time that she was expected to make herself available to perform her duties as scheduled.

Plaintiff was subsequently issued a second written warning about her behavior at work – on December 3, 2023. On that day, Plaintiff's supervisors were informed by Plaintiff's team members that she had spoken disrespectfully about her supervisors with her subordinates regarding daily operations. Plaintiff made several statements about her chain of command to her teams that were disrespectful, unprofessional, and combative. Multiple handlers reported that there had been numerous occasions where they had requested that Plaintiff remain professional and not include them in her unprofessional conduct. Plaintiff was informed that her conduct had caused irreparable harm to the confidence and morale of her team and that her supervisors were concerned about her attitude toward subordinates, peers, and leadership. Plaintiff was informed that behavior of the same or similar nature could result in the initiation of disciplinary action.

On December 9, 2023, **after Plaintiff had been issued warnings about her job performance and unprofessional conduct**, Plaintiff prophylactically lodged a complaint with HR, complaining that Superville had "acted in a harassing, condescending, disrespectful and unprofessional manner on countless occasions." Plaintiff made no mention of any sexually-related harassment at this time (or at any time before her termination). Plaintiff asserted that Superville was "a failure as a leader, incompetent at his job, and a disgrace to the company, and I can no longer allow this to go unspoken." Plaintiff's clear intent in sending this message was to divert attention from her failings as Team Lead and to attempt to discredit Superville and cast him in a negative light.

K2 immediately investigated Plaintiff's HR complaint, with Plaintiff's second line Supervisor, Falconer, speaking with her in person on December 16, 2023. Although Plaintiff complained about Superville's leadership and performance during this meeting, she made no mention of "harassment" or "discrimination" or unwelcome treatment. K2 then attempted to have Plaintiff meet with representatives of its human resources department, on December 21, 2023, to discuss the concerns outlined in her letter.

On December 17, 2023, Plaintiff's supervisors issued her another written warning about her behavior at work. Plaintiff's supervisors had conducted a site visit and discovered that there

2

Hon. Nina R. Morrison
April 24, 2026

was no sustainment cart readied and available for training, the explosives logbook was incorrectly filled out, and that the handlers were not aware of the basic regulations that governed their work at that site. Plaintiff was reminded that, as the team leader, she was responsible for the training and supervision of each of the sites in her area.

On December 18, 2023, Plaintiff received yet another warning from her supervisors. Plaintiff had been speaking in a disrespectful and unprofessional way about those in her supervisory chain of command. Plaintiff's behavior had caused significant conflicts between her team members and had caused a severe loss of confidence and morale. Plaintiff was informed that it was critical that she work with her colleagues as a team and that she show maturity and mutual respect for her team members and her chain of command. Plaintiff had recently acknowledged to her supervisors that the statements she made to subordinates were unprofessional. Plaintiff was informed that her actions had caused significant challenges and placed her subordinates in extremely uncomfortable situations. Plaintiff was informed again that disrespect toward her subordinates, peers, or leadership would no longer be tolerated and that any continued failure to respond to requests for meetings/phone calls would result in further disciplinary actions.

Plaintiff was placed on a performance improvement plan ("PIP") on December 26, 2023. The PIP clearly laid out Plaintiff's job duties and expectations. Plaintiff was warned again about her behavior vis-à-vis her supervisors. The PIP outlined a variety of deficiencies in Plaintiff's performance, as well as a discussion of Plaintiff's repeated violations of K2 company policy vis-à-vis her use of her company vehicle. K2's relevant policy provided that company vehicles were not to be used for personal reasons. K2 attached to the PIP a travel log showing that Plaintiff had abused the use of the company vehicle on numerous occasions during the months of November and December 2024. Plaintiff was informed at this time that any failure to immediately improve and correct her job performance would result in termination.

On January 9, 2024, K2 continued its investigation into Plaintiff's human resources complaint. Representatives of K2 met with Plaintiff for a recorded Teams meeting. Plaintiff made no mention of gender discrimination, gender harassment, sexual harassment, or discrimination or harassment of any kind during this meeting. Mainly, Plaintiff expressed frustration that Superville had not adequately trained her or provided her with enough support or direction. K2's representatives requested that Fermin send Human Resources all email, text and/or other communications relevant to her complaint. **Plaintiff never provided K2 with any such information or documentation – either during the meeting or in the several weeks thereafter.** Indeed, Plaintiff never sent copies of emails or text messages that would corroborate any of her complaints to include Superville being combative, rude, and/or disrespectful. **Significantly, Plaintiff also did not produce any documentation that would support her allegations during discovery in this action.**

K2 issued another written warning to Plaintiff on January 10, 2024. Plaintiff had been scheduled to work a 7:00 AM shift at a specific site. At approximately 8:00 AM, Plaintiff advised her supervisors that she was conducting a site visit. A brief time later, Plaintiff's supervisors were advised by a regional trainer that Plaintiff in fact had not been present at her assigned shift. Plaintiff's supervisors discovered that Plaintiff, without notification or authorization, contacted another handler to replace Plaintiff on her shift. Plaintiff was reminded at this time that she was currently on a PIP and had received extensive counseling sessions from various representatives of

3

Hon. Nina R. Morrison
April 24, 2026

K2. Plaintiff was reminded that her behavior had become detrimental to her team and she was advised that further violations could lead to disciplinary action, potentially including termination.

On January 29, 2024, Plaintiff received an employee counseling report noting once again that Plaintiff had been insubordinate, and that Plaintiff's supervisors were recommending her for termination. On January 26, 2024, Plaintiff had sent text messages to her teammates attempting to get her shift covered, claiming she was moving out of her house and that she had to relocate as soon as possible. Plaintiff had informed her supervisors a few minutes earlier that she was unable to work due to being sick and having a positive COVID test. Plaintiff also was counseled at this time for refusing/failing to reply to her supervisor's emails, Teams meeting invites, text messages and phone calls on the afternoon of January 26, 2024. Plaintiff had ignored all forms of communication with her supervisors that afternoon. In fact, Plaintiff had not responded to any of these communications as of January 29, 2024, the time of the writing of the counseling report. K2 terminated Plaintiff two days later, on January 31, 2024.

## II.    Plaintiff's Claims Fail as a Matter of Fact and Law

### A.  Title VII and NYSHRL Sex Discrimination/Harassment and Retaliation

1. No actionable adverse action because of sex; no severe or pervasive sex-based harassment

Plaintiff's sex-discrimination and harassment theories fail for want of admissible evidence of sex-based animus or a hostile work environment. Plaintiff's record does not establish a hostile work environment. There is no evidence that K2 subjected Plaintiff to sex-based insults, epithets, unwanted sexual conduct, or gender-specific ridicule, nor any evidence tying routine performance management to her gender. The contemporaneous counseling and scheduling issues advanced by K2 are legitimate business reasons and are not evidence of gender-based animus.

Plaintiff testified at deposition that she had no additional facts to support her claims/allegations beyond those alleged in her complaint and her bare-bones interrogatory responses (which generally just referred back to the complaint), and she could not identify any specific instances of maltreatment beyond those alleged in her complaint. The fact that K2 terminated Plaintiff's employment, approximately three months after she complained of general "harassment" and rudeness on the part of her supervisors is not enough for Plaintiff to create a triable issue of fact. K2 articulated legitimate, non-discriminatory reasons for counseling and discipline, including scheduling and performance issues and handler complaints reported to management, documented contemporaneously. And Plaintiff cannot point to any evidence of K2 having any discriminatory intent or animus towards her. The only non-party witness Plaintiff deposed, Mark Holbrook (who led the investigation of Plaintiff's complaint), testified that K2 had "full confidence" in Plaintiff when she was promoted to Team Lead, undercutting any inference of institutional anti-female animus. Further, there is no evidence that K2 subjected Plaintiff to sex-based insults, epithets, unwanted sexual conduct, or gender-specific ridicule, nor evidence tying performance management to gender. **Indeed, the first and only time the Plaintiff invoked the words "sexual" and/or "sexual harassment" before filing suit was in her counsel's post-termination demand letter to K2.**

Hon. Nina R. Morrison
April 24, 2026

Under the *McDonnell Douglas* framework, once K2 offers legitimate reasons, Plaintiff must adduce proof of pretext and discriminatory motive. Plaintiff's conclusory disagreement with supervisory criticism and Plaintiff's generalized internal complaints about Superville are inadequate to raise a triable issue on pretext or discriminatory motive. These same deficiencies foreclose any NYSHRL claim because the federal and state standards both require admissible proof of discriminatory motive.

2. No Title VII, NYSHRL or NYCHRL gender/harassment or retaliation

Retaliation fails for lack of protected activity directed at sex discrimination and for lack of causation. The record does not show that Plaintiff complained to K2 about sex discrimination or sexual harassment, or that she engaged in Title VII/NYSHRL-protected activity as to gender. The record only shows that Plaintiff generally complained to K2 about how she was being treated by Superville and asked that something could be done about the issue. The mere fact that she was terminated after making her complaint is not evidence of discrimination or discriminatory intent. K2 has articulated legitimate, non-retaliatory reasons for Plaintiff's termination—scheduling and performance issues and handler (subordinates) complaints.

Even under the broader NYCHRL "treated less well" standard, summary judgment is proper where the admissible record would not permit a rational finding that adverse treatment occurred because of a protected trait or activity. The memorandum will acknowledge the broader NYCHRL standard and explain why summary judgment remains appropriate where no rational jury could find that K2 treated Plaintiff less well or retaliated because of gender or protected activity. Institutional liability and punitive damages are further undermined by K2's anti-harassment, complaint-procedure, and anti-retaliation policies, and by HR's handling of such issues.

### B. ADA, NYSHRL, and NYCHRL Disability Claims

1. Disability discrimination

Plaintiff cannot show K2 acted because of an actual or perceived disability. Plaintiff testified she identified as a disabled veteran during hiring but never disclosed personal medical information to Superville or Falconer (her supervisors at the relevant time) or Human Resources, her condition never prevented her from doing her job, and she never sought any disability accommodation. This record forecloses a causal nexus and notice to decisionmakers under federal and state standards. K2's memorandum will explain that no reasonable jury could conclude that K2 disciplined or terminated Plaintiff because of a disability or denied her an accommodation on this record.

2. Failure to accommodate

A failure-to-accommodate claim requires a request for accommodation and employer notice. Plaintiff testified unequivocally that she never sought any disability accommodation from K2. That admission defeats ADA and NYSHRL/NYCHRL accommodation theories on this record. The memorandum will address this element and its dispositive effect.

Hon. Nina R. Morrison
April 24, 2026

3. Disability retaliation

Protected activity requires opposition to ADA-proscribed conduct or participation in ADA processes, and but-for causation. Even assuming Plaintiff complained in some fashion about questions concerning an absence or procedure, there is no admissible evidence of but-for causation between any disability-related protected activity and the discipline or termination at issue. K2 maintained written anti-retaliation and complaint-procedure policies, and Falconer circulated an internal reminder instructing managers not to seek medical information and to route doctors' notes to HR, which is inconsistent with an inference that K2, as an entity, retaliated against Plaintiff.

4. Stand-alone medical inquiry

To the extent Plaintiff advances an unlawful medical-inquiry theory, it cannot support the termination-related damages she seeks absent proof that K2 used medical information against her. The record includes an internal instruction from Falconer that managers were not to ask for medical information and that any doctors' notes had to be routed to HR through the employee. On this record, there is no evidence that Plaintiff provided any medical information to K2, that K2 used any medical information against Plaintiff, or that termination was made because of such information.

### C.  False Imprisonment

The common-law false imprisonment claim against K2 fails as a matter of law. Plaintiff testified that, during the meeting at issue, Plaintiff and her colleague Ariel Ballard walked into an office together; Plaintiff claims that Superville then entered, closed the door, leaned against it, and prevented her from leaving. Even crediting that account, there is no evidence that K2 intended, directed, or authorized any confinement or any physical blocking, or that any such blocking served a business purpose. Moreover, any such act falls outside the scope of Superville's employment because physically blocking egress is not a legitimate means of carrying out K2's business and therefore does not trigger respondeat superior liability. And significantly, there are recorded Teams' meeting interviews of both Superville and Ballard in which both individuals deny Plaintiff's allegations and asserted that Superville did not block or confine Plaintiff.

### D.  Plaintiff's Evidentiary Concessions Confirm the Absence of a Triable Case

Plaintiff's admissions further narrow any viable theory. She testified she possessed no additional information supporting her allegations beyond the complaint and her interrogatory responses, which generally referred back to the complaint, and that she simply disagreed with her supervisors' counseling statements and performance assessments. Such subjective disagreement cannot substitute for evidence of discriminatory or retaliatory intent and does not create a genuine issue of material fact.

K2 recognizes NYCHRL's broader construction; the Court should evaluate those claims independently. The memorandum will expressly acknowledge the broader NYCHRL standard and explain that summary judgment remains available where the record would not permit a rational finding that Plaintiff was treated less well or retaliated against because of a protected trait or activity, and that punitive damages are inconsistent with K2's written compliance policies. On this

6

Hon. Nina R. Morrison
April 24, 2026

record, even under NYCHRL, no reasonable jury could find causation or animus to support liability.

### III.  Conclusion

The undisputed record eliminates essential elements of Plaintiff's claims and confirms K2's legitimate, non-discriminatory and non-retaliatory reasons for its actions. For these reasons, the Court should grant summary judgment dismissing the Complaint against K2 in its entirety. For these reasons, K2 respectfully requests the opportunity to fully brief the issues outlined herein and requests that the Court set a briefing schedule or conference to discuss a briefing schedule.[1]

Respectfully submitted,

**HOLON LAW PARTNERS**

*Jason Ehrenberg*

JASON H. EHRENBERG

---

[1]  The parties participated in a mediation on February 26, 2025 with Rebecca Houlding (during this litigation). K2 has met and conferred with Plaintiff about the potential grounds for its Rule 56 motion. the parties have conferred regarding whether Plaintiff still intends to proceed with all causes of action on which K2 seeks summary judgment.